**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JONATHAN BLACK, | : | |
| | : | Civil Action No. 16-8498(MCA) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PATRICK NOGAN and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**MADELINE COX ARLEO, District Judge**

## I.   INTRODUCTION

This matter has been opened to the Court by the pro se Petition pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("Petition")) of Jonathan Black ("Petitioner"). Petitioner purports to present his habeas claims as nine grounds in the Petition. However, he in fact asserts fifteen claims, since Ground Five asserts eight separate claims. (ECF No. 1-2 at 12-33.) For the reasons explained below, the Court will deny all fifteen of the Petition's claims with prejudice and will deny a certificate of appealability.

## II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A. Factual Background

Petitioner's convictions arose from several armed robberies and related crimes in April 2004. This Court briefly reviews their facts as pertinent to this Opinion. *See* 28 U.S.C. § 2254(e)(1).[1]

### 1.  7-Eleven Robbery: April 20, 2004, 12:22 a.m.

On April 20, 2004 at approximately 12:22 a.m., two masked black males armed with handguns robbed a 7-Eleven store in Union, New Jersey ("7-Eleven Robbery"). One robber, the taller and skinnier of the two, wore a short-sleeve white t-shirt, long pants, work boots, and a mask. The shorter robber had "long black braids" and was wearing work boots, a black jacket, short blue jeans, and gloves. The men stole the money from two cash registers and left the store. The store security cameras recorded the 7-Eleven Robbery but provided no identifying information. *State v. Black*, 2009 WL 4981192, at *1 (N.J. Super. Ct. App. Div. Dec. 24, 2009) ("*Black 2009 II*").

### 2.  Quick Chek Robbery: April 20, 2004, 1:00 a.m.

At around 1:00 a.m. on April 20, 2004 -- approximately thirty

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

minutes after the 7-Eleven Robbery -- two armed, masked, black males entered a Quick Chek store in Union. The skinnier robber wore blue jean shorts, a white t-shirt, Timberland boots, gloves, and a black face mask. He took the store's manager behind the counter, had her take all the money out of the cash register, and placed the cash in a bag ("Quick Chek Robbery"). *Black 2009 II* at *1. The other robber was light-skinned, had shoulder-length dreadlocks, and was "more muscular" than the other. He wore a black hooded sweatshirt, blue jean shorts, brown Timberland boots, a black mask, and no gloves. While the manager attempted to open the register, the muscular robber stood on the other side of the counter, threatening to kill her if she did not "hurry up." He was carrying a larger gun than the other robber. *Ibid.*

During the robbery, customer Rodrigo Erazo entered the store. The muscular robber pointed his gun at Erazo and told him to get on the floor or he would be killed. *Ibid.* Police Sergeant Harry Capko responded to the scene and found a shell casing behind the counter. *Black 2009 II* at *2.

### 3. <u>Foot Locker Robbery: April 26, 2004</u>

On April 26, 2004 -- six days after the 7-Eleven and Quick Chek Robberies -- an armed robbery occurred at a Foot Locker store in Union ("Foot Locker Robbery"). *Black 2009* at *1.

Following the Foot Locker Robbery, police office Pietro DiGena took a report from the store's manager ("the Manager"), who

3

stated that a customer ("the Customer") tried to enter the store during the robbery but was turned away by the suspects. (*Black 2009* at *1; ECF No. 8-17 at 5-6.) The Customer told the Manager that, upon leaving the location, he had noticed "a 1995 Mitsubishi Galant, silver, with gray tinted windows, and damage to the right front fender and [a broken right front] headlight" was partially blocking the store's exit ("the Galant"). (*Black 2009* at *1; ECF No. 8-17 at 5-6.) Other witnesses reported that one robber wore an "olive green military [camouflage] jacket" and the other wore "a black hooded sweatshirt." (*Black 2009* at *1; ECF No. 1-2 at 41-42.) The Manager told Officer DiGena that the perpetrators were both armed with handguns. (ECF No. 8-17 at 8.)

### 4. The Vehicle Stop: April 28, 2004

Roughly four hours after the Manager's report to police, Officer DiGena and Officer Barry Cohen ("the Officers") were on patrol in a marked car on April 28, 2004. At approximately 12:23 a.m., they observed a silver 1995 Mitsubishi Galant with damage to the front, right fender and a broken, right headlight. These damages matched the Customer's description of the Foot Locker Robbery perpetrators' vehicle. The damaged vehicle was driving west on Morris Avenue near the Foot Locker store. *Black 2009* at *1. Based on its broken headlight, the officers followed and then stopped the silver Mitsubishi ("The Stopped Vehicle"). (ECF No. 8-17 at 7.) The Officers immediately requested backup. (*Ibid.*) They

4

instructed the car's driver and three passengers ("the Occupants") to roll down their windows "to see better into the car." (ECF No. 8-17 at 6-7; *Black 2009 II* at *2.) The Occupants complied. (ECF No. 8-17 at 7.) While waiting for backup to arrive, the Officers saw that "the front passengers were passing something back to the rear seat passengers," which suggested "they were trying to conceal something." Police instructed the Occupants to stop their movements, with which they complied only after several requests by police. (*Black* 2009 at *1; ECF No. 8-17 at 6-8.) Sergeant Frank Marano soon arrived at the scene to assist Officers DiGena and Coleman. (ECF No. 8-17 at 28-29.)

As Sergeant Marano and Officer DiGena approached The Stopped Vehicle, DiGena noticed that the Occupants wore clothes that matched the Manager's description. (*Black* 2009 at *1; ECF No. 8-17 at 10 and 28.)[2] As the officers got closer to The Stopped Vehicle, they used flashlights to illuminate its interior. They saw facemasks and gloves on its floor. (ECF No. 8-17 at 10 and 32.) Upon DiGena's questioning, Petitioner denied passing anything to the other Occupants. (*Black 2009* at *1; ECF No. 8-17 at 10-11.)

The Officers ordered the Occupants to exit The Stopped Vehicle one-by-one and to sit on the curb. (*Black 2009* at *1; ECF No. 8-

---

[2] Sergeant Marano had also been on the scene of the Foot Locker Robbery after it occurred on April 28, 2004. (ECF No. 8-17 at 29-31.)

5

17 at 13, 17-19.) The police patted down the Occupants for weapons. (*Black 2009* at *1; ECF No. 8-17 at 11.)

Sergeant Marano saw that "the [rear passenger side] seat cushion was pulled away from the side of the vehicle," which suggested to him that "something may have been hidden." (*Black 2009* at *1; ECF No. 8-17 at 12 and 23.) When he pulled on the cushion, "it popped out." (*Black 2009* at *2; ECF No. 8-17 at 10-11 and 34-36.) As it did so, Marano saw the handle of a Colt handgun with the hammer back and its safety removed. Given the risk the weapon might discharge, Marano went around the car to retrieve the gun through the trunk. (*Ibid.*)

To retrieve the Colt, Marano had to move a "speaker box" in the trunk. There he found a second semiautomatic handgun on the driver's side in a location identical to that of the first gun. (ECF No. 8-17 at 36.) He also found: a knife with a six-inch blade in the pocket of the driver's door; and Petitioner's high school identification card under the tire in the wheel well. (*Ibid.*)

The police arrested all four Occupants and took them separately to police headquarters. (ECF No. 8-17 at 13.) The police determined that Petitioner was the driver and wore a black hooded sweatshirt. The front-seat passenger, later identified as Kevin Drake, wore a green military jacket. The driver's side rear passenger was identified as Ernest Oliver. The passenger side rear passenger was identified as Tariq McLamb. (ECF No. 1-2 at 43.)

McLamb, Oliver, and Black gave statements to the police about the weapons in The Stopped Vehicle as well as information about various other robberies. (*Black 2009* at *2; ECF No. 8-17 at 12-13 and 24.) Police advised all defendants of their *Miranda* rights before they provided their statements, and all defendants waived those rights in writing. (ECF No. 1-2 at 43.) Petitioner told the officers at the scene that he borrowed The Stopped Vehicle from a friend's mother to go to the movies and to get "prom stuff." *Ibid*.

Sergeant Michael Sanford, who was in charge of Union's police ballistics lab, testified at trial that he tested the two guns seized from The Stopped Vehicle ("the Weapons Evidence"). (ECF No. 8-26 at 18 and 30-34.) The weapons test revealed that one of the seized guns had been used in at a gas station shooting on April 12, 2004.[3] (*Black 2009* at *2; ECF No. 8-17 at 37.) Sandford found

---

[3] En route from Newark on April 12, 2004, Robert Walker and Petitioner stopped for gas. After Walker opened the driver door to request fuel, Petitioner reached across him while holding a gun and stated to the station attendant: "Give me the damn money or I'll kill you" (the "Gas Station Shooting"). *State v. Black*, No. a-3608-13T3, 2016 WL 2903612, at *1 (N.J. Super. Ct. App. Div. May 29, 2016) ("*Black 2016*"); *State v. Black*, 2009 WL 348548, at *2. (N.J. Super. Ct. App. Div. Feb. 13, 2009) ("*Black 2009*"). When the attendant retreated in panic, Petitioner shot him in the chest and ordered Walker to drive away. *Black 2009* at *2. The attendant survived the attack. Both the bullet and casing were recovered. Ballistic tests connected the ammunition with one of the guns found in the vehicle that Petitioner was driving after he committed other crimes on April 28, 2004. *Ibid*. Petitioner, who was apprehended following an April 26, 2004 armed robbery of a Foot Locker store, as described above, confessed to the Gas Station Shooting but repudiated his confession at trial, saying that his confession had been manufactured by the police without any involvement on his

(*Black 2009* at *2; ECF No. 8-17 at 37.) Sandford found both seized weapons were fully operable. (ECF No. 8-17 at 40-41.) A casing test-fired from the Colt .380 automatic handgun matched the .380 casing recovered from the scene of the Quick Chek robbery. (*Id.* at 34-35.)

### 5. Petitioner's Confession

After Petitioner's April 28 arrest, police transported him to Union Township Jail. According to Petitioner, Detective Gregory Rossi told him that "the first one [who] talks, walks." *Black 2009 II* at *3. Approximately fifteen hours after police arrested Petitioner, they brought him into an interrogation room. Officer

---

In connection with the Gas Station Shooting, Indictment No. 04-10-1303 charged Petitioner with: second-degree aggravated assault causing serious bodily injury, N.J. Stat. Ann. § 2C:12-1(b)(1); first-degree armed robbery, N.J. Stat. Ann. § 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J. Stat. Ann. § 2C:39-5(b). *Black*, 2009 WL 348548, at *1. The jury found Petitioner guilty on all counts of the indictment against him. *Black 2009* at *1. Petitioner was sentenced to an aggregate term of sixteen years in prison with an eighty-five percent parole disqualifier, pursuant to the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2 ("NERA"). *Black 2009* at *1.

Petitioner directly appealed. The Appellate Division affirmed, remanding only for resentencing. *Black 2009* at *1. After the judge resentenced Petitioner to the original term following remand, Petitioner appealed the resentence. The Appellate Division affirmed. *Black 2009* at *1. The New Jersey Supreme Court denied certification. *State v. Black,* 970 A.2d 1048 (N.J. 2009).

On December 16, 2013, Petitioner's application for post-conviction relief ("PCR") as to the Gas Station Shooting was denied. *Black 2016* at *1. On May 19, 2016, the Appellate Division affirmed. *Ibid.* On October 14, 2016, the New Jersey Supreme Court denied certification. *State v. Black*, 154 A.3d 684 (N.J. 2016).

Christopher Baird verbally read Petitioner his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and gave him a standard *Miranda* waiver form. Petitioner signed the form and agreed to speak to police. *Black 2009 II* at *3. During the approximately two hour interrogation, Petitioner was calm and cooperative throughout the interview. Petitioner read and signed his statement ("Confession"), initialing each page at the bottom. *Ibid*. In his Confession, Petitioner admitted to participation in the 7-Eleven Robbery, Quick Chek Robbery, Foot Locker Robbery, Gas Station Shooting, a Chinese restaurant armed robbery, and a Kids-R-Us armed robbery. He stated that, when pulled over, the Occupants were contemplating an additional robbery. *Black 2009* at *3 n. 1.

### 6.    Trial On Charges Related To The 7-Eleven And Quick Chek Robberies

In June and July of 2006, Petitioner stood trial alone for the 7-Eleven Robbery and the Quick Chek Robbery, which were tried jointly with no objection from Petitioner.[4] (*Black 2009 II* at *4);

---

[4] Indictment No. 04-10-1268 charged Petitioner with first-degree robbery, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon in connection with the 7-Eleven Robbery. (ECF No. 8-19 at 2.) Indictment No. 04-10-1269 charged Petitioner with identical crimes as to the Quick Chek robbery. (*Ibid*.) On June 16, 2006, the Honorable Joseph P. Perfilio, J.S.C. granted the State's motion to join the indictments for purposes of trial. (*Id*. at 4-5.) Petitioner does not assert claims in his § 2254 Petition presently before this Court as to the Foot Locker Robbery (*see* ECF Nos. 1 and 1-2), and state court records as to criminal prosecution of Petitioner in connection with that robbery are not in the habeas record before this Court.

ECF Nos. 8-20 - 8-29.) The jury found him guilty of the following charges: two counts of first degree robbery, N.J. Stat. Ann. § 2C:15-1; second degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4a; and third degree unlawful possession of a weapon, N.J. Stat. Ann. § 2C:39-5b. (*Black 2009 II* at *1 and *4; ECF No. 8-29 at 6-8.)

Judge Perfilio merged the convictions for first degree robbery and possession of a weapon for an unlawful purpose. (*Black 2009 II* at *1; ECF No. 8-30 at 5-7.) The judge imposed: two consecutive fourteen-year terms subject to an eighty-five percent parole disqualifier pursuant to NERA[5]; and two concurrent five-year terms for each unlawful possession of a weapon conviction. *Black 2009 II* at *1. Thus, Petitioner's aggregate sentence was a twenty-eight year term with an eighty-five percent NERA parole disqualifier. *Ibid.*

On December 24, 2009, the Appellate Division affirmed Petitioner's conviction and sentence as to the 7-Eleven and Quick Chek Robberies. (*Black 2009 II* at *1; ECF No. 8-3.) On March 18, 2010, the New Jersey Supreme Court denied certification. *State v. Black*, 991 A.2d 232 (N.J. 2010).

---

[5] "A court imposing a sentence of incarceration for a crime of the first or second degree enumerated in subsection d. of this section shall fix a minimum term of 85% of the sentence imposed, during which the defendant shall not be eligible for parole." N.J. Stat. Ann. § 2C:43-7.2a.

On December 16, 2013, the Honorable William A. Daniels, J.S.C. denied Petitioner's PCR application as to the 7-Eleven and Quick Chek Robberies. (ECF No. 8-10 at 1-22; ECF No. 8-15 at 1-2.) On May 19, 2016, the Appellate Division affirmed. (ECF No. 8-15 at 2.) On November 3, 2016, the New Jersey Supreme Court denied certification. *State v. Black*, 156 A.3d 167 (N.J. 2016).

On November 7, 2016, Petitioner filed his § 2254 Petition (ECF No. 1 at 15), setting forth the following claims: (1) Fourth Amendment violation from the warrantless search of Petitioner's vehicle and the purportedly tainted search's fruit (i.e., seized weapons and his confession); (2) due process violation from denial of a mistrial; (3) the trial judge's unconstitutional failure to instruct the jury on identification; (4) constitutionally improper summation by the prosecutor; (5) denial of fair trial due to sleeping jurors; (6) improper juror communication with a trial witness; (7) the trial judge's improper comment to jurors regarding the weight of witness testimony and regarding juror sleeping; (8) denial of fair trial due to the judge's improper gesture to a juror; (9) constitutional rights deprivation from the trial judge nodding off during trial; (10) ineffective assistance of counsel ("IAC") due to counsel's failure to seek additional voir dire regarding alleged jury misconduct; (11) IAC due to counsel's failure to seek removal of sleeping jurors; (12) IAC due to counsel's failure to seek a mistrial for purported juror

misconduct; (13) denial of due process due to disjointed trial proceedings; (14) cumulative errors; and (15) excessive sentence. (ECF Nos. 1 and 1-2.)

## III. **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts must afford great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)).

Federal law is "clearly established" for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington*, 562 U.S.

13

at 100. "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* at 102-03. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "when the relevant state-court decision on the merits ... does not come accompanied with ... reasons ... [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

IV. **ANALYSIS**

A. **Ground One: Fourth Amendment Violation**

Ground One argues that the trial court's denial of Petitioner's motion to suppress[6] "violated [his] Fourth Amendment

---

[6] Prior to trial in June-July 2006, Petitioner filed a motion ("Suppression Motion") challenging the admissibility of his

14

right of protection against illegal search and seizure." (ECF No. 1-2 at 4.) Specifically, he argues that: (1) the April 28, 2004 warrantless seizure of the Weapons Evidence was improper; and (2) his Confession following that seizure was fruit of the illegal vehicle search. (*Id.* at 4-7 ("Fourth Amendment Claim").)

Judge Wertheimer's July 11, 2005 written opinion upheld the search of The Stopped Vehicle and its Occupants as: a protective search pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); and, in the alternative, a search justified under the automobile exception[7] to the warrant requirement.[8] (ECF No. 1-2 at 44-46 and 50-51.)

This Court finds that Ground One: (1) is barred from habeas review; and (2) lacks merit, in any event.

### 1. *Stone v. Powell* **Bars Habeas Review Of Ground One**

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an

---

Confession and the Weapons Evidence (collectively, "Seized Evidence"). (*Black 2009* at *1; ECF No. 1-2 at 50.) The state court record indicates that Petitioner sought to suppress seized weapons evidence and the perpetrators' statements in both the Gas Station Shooting trial as well as the trial on the 7-Eleven and Quick Chek Robberies. (*See* ECF No. 1-2 at 41 and 47; ECF No. 8-17 at 1.) On June 1, 2005, Judge Wertheimer held an evidentiary hearing on the Suppression Motion ("Suppression Hearing"). (ECF No. 8-17.)

[7] Judge Wertheimer noted that both sides had agreed that police lawfully detained The Stopped Vehicle as the result of a broken headlight. (*Black 2009* at *2; ECF No. 1-2 at 42.)

[8] In March 2006, Judge Wertheimer denied the defense's motion for reconsideration of Suppression Motion denial. (ECF No. 1-2 at 49-51.) The Appellate Division affirmed. *Black 2009 II* at *4-5 and *8.

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 495-96. As the Third Circuit explained in *Hubbard v. Jeffes*, 653 F.2d 99 (3d Cir. 1981), *Stone* stands for the proposition that "when a state prisoner raises a Fourth Amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state tribunal had afforded the petitioner 'an opportunity for a full and fair litigation' of his claim." *Hubbard*, 653 F.2d at 102-03 (citing *Stone*, 428 U.S. at 494); *see also Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar") (citations omitted); *Reininger v. Attorney Gen. of New Jersey*, No. 14-5486, 2018 WL 3617962, at *9 (D.N.J. July 30, 2018). Petitioners can avoid the *Stone* bar only by demonstrating that the state system contains a structural defect that prevented full and fair litigation of the Fourth Amendment claim. *Marshall*, 307 F.3d at 82.

Here, Petitioner availed himself of the opportunity for a full and fair litigation of his Fourth Amendment Claim. He moved to suppress the Seizure Evidence. (*Black 2009* at *1[9]; ECF No. 1-2

---

[9] The state court record on the Suppression Motion indicates that Petitioner sought to suppress seized weapons evidence and the

at 50.) The trial court held an evidentiary hearing on the matter, during which Officer DiGena and Sergeant Marano testified. (ECF No. 8-17.) The trial court denied the Suppression Motion as well as its reconsideration. (ECF No. 1-2 at 41-46 and 49-51.) Petitioner then presented his Fourth Amendment Claim on direct appeal, which the Appellate Division rejected. *Brown 2009* at *1 and *3; *Brown 2009 II* at *4.

This Court therefore concludes that the New Jersey courts provided Petitioner with an adequate forum to present his Fourth Amendment Claim. He had a full and fair opportunity to litigate it in the state courts. He has failed to demonstrate any structural defect in the state courts' review of that Claim. (*See* ECF Nos. 1 and 1-2.) In accordance with *Stone* and its progeny, this Court may not consider the Fourth Amendment Claim. *See Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *Hubbard*, 653 F.2d at 103; *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir. 1984) (contention that defendant's confession and all other evidence admitted at his trial should have been suppressed as fruit of illegal arrest was not proper subject for consideration by federal habeas corpus court under *Stone*). *See also Jones v. Johnson*, 171 F.3d 270 (5th Cir. 1999).

---

perpetrators' statements in both the Gas Station Shooting trial as well as the trial on the 7-Eleven and Quick Chek Robberies. (*See* ECF No. 1-2 at 41 and 47; ECF No. 8-17 at 1.)

The Court will deny Ground One as barred by *Stone*.

## 2. **Ground One Lacks Merit**

Even if *Stone* did not bar habeas review of Ground One, the Fourth Amendment Claim is without merit as well.

The Constitution prohibits the government from conducting "unreasonable searches" of "persons, houses, papers, and effects." U.S. Const. amend. IV. "The general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040-41 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). The warrant requirement usually determines whether a search is unreasonable. *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2452 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

Any evidence obtained in connection with an unauthorized search must be suppressed as "fruit of the poisonous tree." *U.S. v. Brown,* 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun,* 371 U.S. at 487–88).

Relevant in Petitioner's case are the "protective sweep" and "automobile" exceptions to the warrant requirement.

First, as to the warrant requirement's protective sweep exception, it is well established that police officers may, under certain circumstances, conduct a protective, security sweep of a

vehicle's passenger compartment without a warrant during a lawful investigatory vehicle stop. *Michigan v. Long*, 463 U.S. 1032, (1983) (relying on *Terry*, 392 U.S. 1). Warrantless sweeps are permitted as valid protective searches when there is reason to believe a subject is armed and dangerous. *Terry*, 392 U.S. at 27. This exception enables officers to ascertain whether a suspect is armed and to neutralize the threat of harm. *Id.* at 23.

The protective sweep exception applies where "the police officer possesses a reasonable belief based on specific and articulable facts which" reasonably justify "the officer in believing that the suspect is dangerous and [ ][ ] may gain immediate control of weapons." *Maryland v. Buie,* 494 U.S. 325, 332 (1990) (citations and internal quotation marks omitted). *Accord Michigan,* 463 U.S. at 1049; *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002) (courts consider whether a reasonably prudent officer would, under the totality of circumstances, believe the driver or occupants present an immediate danger) (citation omitted); *U.S. v. Edwards,* 53 F.3d 616, 618 (3d Cir. 1995).

In Petitioner's case, it was objectively reasonable for the state courts to determine that the protective sweep exception to the warrant requirement applied. Police had lawfully stopped Petitioner's vehicle based on its broken headlight. *See Delaware v. Prouse*, 440 U.S. 648 (1979). The parties agreed on that issue.

19

*Brown 2009* at *2. After police made that lawful stop of Petitioner's vehicle, the record shows that police reasonably suspected the Occupants might be armed and dangerous because: (1) The Stopped Vehicle had been sighted near the Foot Locker Robbery location; (2) the two front-seat passengers wore clothing that matched the descriptions provided by the Foot Locker Robbery victims; (3) police sighted masks and gloves on the floor of the Stopped Vehicle, such as the Foot Locker perpetrators had used; (4) the police observed the front-seat passengers surreptitiously passing something to the back seat; (5) the Occupants denied engaging in the movements the police witnessed; and (6) the stop occurred after midnight. *Ibid.* The suspicious movement within The Stopped Vehicle, coupled with other evidence linking the Occupants to an armed robbery, reasonably justified a continued search of the car. The reasonable assumption was that weapons might be concealed within the automobile itself. A continued search of the vehicle was necessary to ensure the safety of the three officers, who were out-numbered by the four Occupants. (*See* ECF No. 8-17 at 6-7; *Black 2009 II* at *2.)

Furthermore, the scope of the police search of The Stopped Vehicle was reasonable under the circumstances. Sergeant Marano initially limited his search to the area where he observed furtive movements and where he noticed the seat cushion was pulled away. (ECF No. 1-2 at 44.) Marano pulled on the seat cushion, which

20

revealed a Colt handgun, whose safety was off and whose hammer was pulled back. (*Ibid.*) Marano then went through the trunk to secure the weapon because of safety concerns. (*Ibid.*) Officer safety is a legitimate concern when assessing the scope of a search. *See Florida v. Royer*, 460 U.S. 491, 500 (1983).

For these reasons, it was objectively reasonable for the state court to determine that the police search of The Stopped Vehicle met both prongs to the protective search exception: (1) reasonable suspicion of danger and (2) justifiable scope of search.

Second, as to the warrant requirement's automobile exception, police need not obtain a warrant before searching a vehicle when they probable cause to believe it contains contraband. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999). The automobile exception has no separate exigency requirement. *Dyson*, 527 U.S. at 466. The automobile exception to the warrant requirement permits "'the search of every part of the vehicle and its contents that may conceal the object of the search,'" provided that probable cause supports such search. *United States v. Donohue*, 764 F.3d 293, 300 (3d Cir. 2014) (quoting *Gant*, 556 U.S. 332). A search's validity pursuant to the automobile exception depends on whether officers had probable cause to believe that the vehicle contained, at the time of the search, evidence of a crime. *Donohue*, 764 F.3d at 301.

In Petitioner's case, it was objectively reasonable for the state courts to determine that the automobile exception to the

warrant requirement applied. As described *infra*, police had reason to suspect that the Occupants might have possessed a deadly weapon. *Black 2009 II* at *2; *Black 2009* at *1. Additionally, the Officers were involved in an ongoing investigation of events that occurred close in time. *Black 2009 II* at *1. Despite the Occupants exiting The Stopped Vehicle, there was a possibility that persons other than the Occupants could access the car. (*Black 2009 II* at *2; *Black 2009* at *1; ECF No. 8-17 at 6-7, 13, 17-19.) The automobile exception to the warrant requirement therefore applies. *See Maryland*, 527 U.S. at 467; *Donohue*, 764 F.3d at 300; *Gant*, 556 U.S. 332.

Under these clearly established protective sweep and automobile exceptions to the warrant requirement, it was not contrary to or an unreasonable application of United States Supreme Court precedent for state court to find that police lawfully obtained the Seized Evidence as to both (1) the Weapons Evidence; and (2) the Confession. As to the latter, Petitioner's arrest and Confession subsequent to that search were not fruit of the poisonous tree – because the protective sweep and automobile exceptions applied to the search of The Stopped Vehicle. *See Brown,* 448 F.3d at 244 (citing *Wong Sun,* 371 U.S. at 487-88). Accordingly, the Fourth Amendment Claim is also without merit, even if not barred by *Stone*. Ground One is denied habeas relief.

**B. Ground Two: Mistrial Claim**

Ground Two argues that the trial court denied Petitioner's Fifth and Fourteenth Amendment rights by denying a mistrial. Petitioner moved for mistrial after the jury saw information on the back of an exhibit ("the Writing") during deliberations that inferentially connected him to an unrelated robbery involving a shooting. (ECF No. 1 at 7; ECF No. 1-2 at 7-10 ("Mistrial Claim").)

Specifically, the Writing referenced an Exxon station robbery and shooting but did not mention the Petitioner by name. *Black 2009 II* at *5. The jury sent a note to the judge during deliberations, asking: "What is on the back of this board with the map? It references a .45 cal. and .380 in Union. Unconnected to this case? We would like the court to be aware of it." *Ibid*. Defense counsel had previously noticed the Writing and requested the State turn the board so it was not exposed to the jury. However, neither side realized the Writing was being submitted to the jury as an exhibit. *Ibid*.

In denying Petitioner's motion for mistrial, Judge Perfilio found the Writing was potentially prejudicial, but he ruled there was no "overriding, absolute manifest necessity for [a] mistrial." (*Ibid*.) Judge Perfilio instructed the jury as to the Writing:

> It is completely unconnected to this case. It has nothing to do with this case, this defendant ... It went in there in error and your perceptions are very, very good it seems. You are to completely disregard anything that

was on that board.

> [A]s I said, you can only consider evidence.
> That wasn't evidence. What is on the front was
> evidence, the map. You can't consider [the
> Writing] in any way or have it enter into your
> deliberations in any manner in any way at all.
> It should not prejudice either side in this
> case. It was a mistake that was not caught.

*Black 2009 II* at *5 ("Curative Instruction").

The jury then requested a read-back of Petitioner's testimony. A small portion of this testimony was redacted, as it included a question and answer relating to the Writing. *Ibid.*

The Appellate Division rejected the Mistrial Claim during Petitioner's direct appeal because there was: no manifest necessity for declaration of a mistrial; no implication of constitutional issues; and no unjust result in Petitioner's case. *Black 2009 II* at *6 (internal citations omitted).

The Mistrial Claim does not merit federal habeas relief. It asserts that the state court erred as a matter of state law[10] in denying a mistrial in favor of giving the Curative Instruction. (ECF No. 1-2 at 7-10.) However, "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger,* 459

---

[10] Under New Jersey law, a motion for a mistrial may be granted only in those situations where continuing the trial would result in manifest injustice. *State v. DiRienzo,* 251 A.2d 99 (N.J. 1969). The decision to deny a motion for mistrial is within the sound discretion of the trial judge. *State v. Winter,* 477 A.2d 323 (N.J. 1984).

24

U.S. 422, 438 n. 6 (1983). Habeas claims that rely exclusively upon state law in asserting error in a state court's evidentiary ruling, like any other assertion of state court error in the application of state law, do not warrant habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas corpus to re-examine state-court determinations of state-law questions"); *see also Keller v. Larkins,* 251 F.3d 408, 416 n. 2 (3d Cir. 2001).

For a federal due process claim, Petitioner would have to prove that he was deprived of fundamental elements of fairness in his criminal trial. *See Glenn v. Wynder,* 743 F.3d 402, 407 (3d Cir. 2014) (citing *Riggins v. Nevada,* 504 U.S. 127, 149 (1992) and *Lisenba v. California,* 314 U.S. 219, 236 (1941)). Due process inquiry is limited to whether the state court's ruling was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. *See Romano v. Oklahoma,* 512 U.S. 1, 12-13 (1994); *Keller,* 251 F.3d at 413. The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly based on the recognition that [b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited application." *Medina v. California,* 505 U.S. 437, 443 (1992). "[T]o satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Glenn,* 743 F.3d at 407 (citing *United States v. Hasting,* 461 U.S. 499, 508 (1983)).

Here, Judge Perfilio decided that not only did the Writing fail to reference Petitioner (ECF No. 8-28 at 67), but the jury "would have to leap to certain conclusions and speculate with regards to it" in order for the Writing to be prejudicial to Petitioner. (*Id.* at 67-68.) Indeed, the jury itself suggested the language was unrelated to the convenience store robberies. (ECF No. 8-28 at 56 ("What is on the back of this board with the map? ... Unconnected to this case").) The Appellate Division found that Judge Perfilio's "curative instruction underscored these points." *Black 2009 II* at *6.

As to whether denial of mistrial violated fundamental fairness, this state court ruling was not an unreasonable application of clearly established federal law. There was substantial evidence of Petitioner's guilt: *e.g.*, Petitioner's incriminating statement; the bullet casing found at the Quick Chek matching the gun found in The Stopped Vehicle that Petitioner drove; and the masks and gloves on the floor of that car. *See Black 2009 II* at *6. On this record, it was objectively reasonable for the Appellate Division to find it unlikely the jury would have acquitted Petitioner but for its exposure to the Writing.

In short, although the Writing had the potential to prejudice Petitioner, the Curative Instruction -- coupled with the fact the Writing only indirectly referenced Petitioner -- suggests that Petitioner was not "deprived of fundamental elements of fairness

in his criminal trial," *see Glenn,* 743 F.3d at 407, as a result of
mistrial denial. Furthermore, the overwhelming evidence against
Petitioner, *see Black 2009 II* at *6, underscored the lack of
prejudice in the jury's exposure to the Writing. Petitioner has
failed to establish any due process violation or undue prejudice
that resulted in a manifest injustice or an unfair trial with
respect to denial of his mistrial motion. Ground Two does not
warrant habeas relief and will be denied.

### C. **Ground Three: Jury Instruction Claim**

Ground Three argues that the trial court deprived Petitioner
of his due process rights under the Fifth and Fourteenth Amendments
by failing to instruct the jury on the issue of
identification. (ECF No. 1 at 8; ECF No. 1-2 at 10-11 ("Instruction
Claim").) In support, Petitioner claims that "since no one ...
from either [the 7-Eleven or Quick Chek] store ... identified [him]
... [as] involved in either robbery," the "jury should have been
instructed that they could take the lack of identification into
consideration [as to] guilt." (ECF No. 1-2 at 10-11.)

Petitioner did not raise the Instruction Claim at trial. *Black
2009 II* at *6. During direct appeal, the Appellate Division:
reviewed the Instruction Claim; applied the "plain error"
standard; and rejected the Claim because: (1) identification was
never an issue at trial; and (2) failure to give an identification
instruction, particularly in the absence of any request for one,

was harmless since: (a) the State's case did not rely on eyewitnesses placing Petitioner at either the 7-Eleven Robbery or Quick Chek Robbery scenes; and (b) there was other substantial evidence of his involvement in those crimes. *Id.* at *6-7.

This Court will deny the Instruction Claim for three reasons:

(a) *Ground Three Does Not Warrant Habeas Review*: As noted *supra*, federal courts' habeas powers do not permit reversal of convictions based on a belief that a trial judge incorrectly applied a state evidentiary rule. *See Marshall*, 459 U.S. at 438 n. 6. The only question on habeas is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 67-68 and 72. Federal courts must afford the states deference in determinations regarding evidence and procedure. *See Crane v. Kentucky,* 476 U.S. 683, 690 (1986); *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), *cert. denied,* 522 U.S. 1109 (1998).

Here, to the extent Petitioner asserts that Judge Perfilio's identification instruction determination violated state law, the Instruction Claim is not reviewable in habeas. *See Estelle,* 502 U.S. at 67-68; *Romano,* 512 U.S. at 12-13; *Keller,* 251 F.3d at 413. Not instructing the jury on the absence of any 7-Eleven Robbery and Quick Chek Robbery witness identification of Petitioner as a perpetrator was a matter of state evidence law. As such, it is not

reviewable by this Court. *See Engle v. Isaac,* 456 U.S. 107 (1982); *Henderson v. Kibbe,* 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 309 (3d Cir.), *cert. denied,* 502 U.S. 902 (1991). Petitioner has not shown due process deprivation or fundamental unfairness to render the Instruction Claim reviewable on habeas.

(b) *Harmless Error*: Even in cases where constitutional errors in evidence-related state court rulings have occurred, they are subject to "harmless error" analysis. *Neder v. United States,* 527 U.S. 1, 8–11 (1999); *Lewis v. Pinchak*, 348 F.3d 355, 359 (3d Cir. 2003); *Horn,* 120 F.3d at 416–17. This principle includes failure-to-instruct contexts. *See, e.g., Lewis*, 348 F.3d at 359 (citing cases). Under the harmless error test, a petitioner must demonstrate constitutional error that resulted in "actual prejudice." That analysis asks whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Eley v. Erickson,* 712 F.3d 837, 847 (3d Cir. 2013) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). *See also Fry v. Pliler*, 551 U.S. 112, 121–22 (2007); *Bond,* 539 F.3d at 275–76; *Adamson v. Cathel,* 633 F.3d 248, 260 (3d Cir. 2011) (citations omitted).

Judge Perfilio's decision not to instruct the jury on identification was harmless. The evidence of Petitioner's guilt was overwhelming. (ECF No. 8-10 at 12 ("[T]here was substantial evidence of [Petitioner]'s guilt: [his] incriminating statement;

29

the bullet casing found at the Quick Chek matching the gun found in the car he was driving, and the masks and gloves on the floor of the car").) Consequently, any purported error in omitting an identification instruction was harmless, when balanced against such evidence. *See Henderson*, 431 U.S. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law"). Moreover, an omitted instruction, notably, is less likely to be prejudicial than a misstatement of the law. *Henderson*, 431 U.S. at 155. This means that "a petitioner seeking habeas relief based on a trial court's failure to give a particular instruction has an 'especially heavy' burden of demonstrating that the failure to give the instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment." *Kellum v. Pierce*, 24 F. Supp.3d 390, 404 (D. Del. 2014) (citing *Henderson*, 431 U.S. at 154-55).

The state court record compels this Court to conclude that Judge Perfilio's failure to give an identification instruction was not an error of constitutional dimension. It did not have a substantial and injurious effect on the verdict. *See, e.g., Lewis*, 348 F.3d at 359-60; *Government of the Virgin Islands v. Bellot*, 473 F. App'x 123, 127 (3d Cir. 2012) (failure to instruct that jury could consider a prior inconsistent statement as substantive evidence was harmless where evidence of guilt "was overwhelming").

(c) *State Court Rulings As To The Instruction Claim Were Not Contrary To Any Federal Precedent*: Petitioner has not cited, and this Court has not discovered, any United States Supreme Court decisions requiring a trial court to instruct the jury regarding the absence of eyewitness identification of a defendant at the crime scene "[as to] guilt beyond a reasonable doubt." (*See* ECF No. 1-2 at 10-11.)

For these reasons, the state court decisions on the Instruction Claim were not contrary to, or an unreasonable application of, clearly established federal law. Ground Three is denied on the merits.

### D. **Ground Four: Summation Claim**

Ground Four argues that the prosecutor's summation "exceeded the bounds of propriety" and violated Petitioner's due process rights. (ECF No. 1 at 10 ("Summation Claim").) In support, Petitioner argues that "while the prosecutor did not directly state that the police had no motive to lie, that message was actually conveyed to the jury by repeated attacks on [P]etitioner's theory that the testimony of the police and the [Confession] had been fabricated." (ECF No. 1-2 at 11-12.)

At trial, defense counsel's summation suggested on several occasions that the testifying police officers[11] lacked

---

[11] At trial, Union Township Police Sergeant Harry Capko, Officer Barry Cohen, Sergeant Frank Marano, Detective Michael O'Brien,

credibility.[12] Following that summation, the Assistant Prosecutor told the jury during the State's closing:

> Now, [Detective] Miller testified today. He is a 28-year veteran of the Union Police Department. Now, aside from [Detective] Miller, the defendant also testified that there were other detectives present. Also veterans of the Union Police Department. I ask you why would they want to fabricate a statement? And if they were going to fabricate a statement or they were going to fabricate this case, wouldn't they have made it a hundred percent?

(ECF No. 8-27 at 153.) Neither side objected to these aspects of the other's summation.

The Appellate Division rejected the Summation Claim during direct appeal in the 7-Eleven and Quick Chek Robbery case. *Black 2009 II* at *7 ("given the weight of the evidence against [Petitioner], the prosecutor's statement was not "clearly capable

---

Detective Gregory Rossi, Detective Robert Miller, and Sergeant Michael Sandford testified for the prosecution.(ECF No. 8-23 at 91-92 and 132; ECF No. 8-24 at 49; ECF No. 8-25 at 4, 55, and 82; ECF No. 8-26 at 17-18.)

[12] For example, defense counsel: (1) stated the jury could "take Detective Sandford's testimony "with a grain of salt" since he "didn't know "whether the ammunition used to test fire th[e] [robbery] gun was the same ammunition as the example that it was being compared to"; and (2) suggested that Officer Cohen was unreliable because he testified that the Occupants' surreptitious passing of objects between the front and back seats "[went on] maybe a minute or two," while defense counsel countered that "get[ting] something from the front to the back seat of a compact car doesn't require a minute of wiggling around like the officer testified to." (ECF No. 8-27 at 128-31, 133-35, 137-38, and 140) (referring to "the questionable credibility of predominantly the police witnesses").)

of producing an unjust result").

Ground Four will be denied because the state court decision rejecting it were neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

Prosecutorial misconduct is not a basis for reversal unless the conduct was so egregious that it deprived a defendant of a fair trial. *See Parker v. Matthews*, 567 U.S. 37, 45 (2013); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristofaro*, 416 U.S. 637 (1974)). In order to warrant a reversal, a prosecutor's statements must constitute a clear infraction and substantially prejudice a defendant's fundamental right to have the jury fairly evaluate the merits of the defense. *United States v. Young*, 470 U.S. 1, 11-12 (1985); *State v. Roach*, 680 A.2d 634 (N.J.), *cert. denied*, 519 U.S. 1021 (1996). Federal habeas review is limited to determining whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence adduced at trial. *Evans v. D'Ilio*. No. 15-2132, 2016 WL 3219874, at *9 (D.N.J. June 6, 2016) (citing *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011)).

In this case, the State's theory turned largely upon Petitioner's Confession. Law enforcement witnesses supported the

Confession's accuracy and lawfulness. (*See*, *e.g.*, ECF No. 8-27 at 154-57 and 166.) Petitioner at trial contended that police fabricated his Confession and lied about how they obtained it. (*See* ECF No. 1-2 at 11-12.) To do so, he attacked the State witnesses' credibility, such as: (1) Detective Sandford's lack of knowledge about the Colt .380 weapon line colors; (2) Detective O'Brien's purportedly implicit acknowledgment of "bad police work" when he "kind of chuckled" about "instruct[ing] [officers] on how to preserve evidence" -- which, in Petitioner's case, resulted in the police "putting tape on the bullets [to] package[] as evidence [and] ruin[ing] the possibility of fingerprints lifted off those bullets"; (3) Officer Cohen's testimony about the Occupants passing "all kinds of things around in the [Stopped Vehicle]," despite the obstructed view from window tinting; and (4) Detective Miller's "extremely shaky" credibility due to his claim that detectives "just waited until [Petitioner] grabbed one of them walking by the cell and said I want to tell you all about these robberies because I am tired of sitting in here. You didn't promise me anything, but I want to talk. [Miller] is totally unbelievable." (ECF No. 8-27 at 128-31, 133-35, 137-38, and 140.)

Therefore, after the defense's summation attack on the State's witnesses who supported the Confession's lawfulness, the prosecutor had to address those attacks. While Petitioner takes issue with the choices made by the prosecutor during summation,

none of the statements, looking at the trial as a whole, rendered the resulting conviction a denial of due process. The State's query to the jury - *i.e.*, "why would the[] [officers] [would] want to fabricate a[n] [incriminating] statement," *see* ECF No. 8-27 at 153 -- did not improperly influence the jury about State witnesses' motive. Rather, it met the defense's summation challenge to the State witnesses' credibility. The Appellate Division reasonably found in these circumstances that "the prosecutor's comments were a proper response to defense counsel's closing argument[,]" given that "a prosecutor may respond to an argument made by defense counsel during closing." *Black 2009* at *3.

Petitioner has not demonstrated, and the record does not suggest, that the prosecutor's challenged statements were clearly capable of producing an unjust result. Review of the State's summation as a whole convinces this Court that there was nothing so egregious as to deprive Petitioner of a fair trial. *See Parker*, 132 S.Ct. at 2153; *Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643. None of the comments challenged by Petitioner "infected the trial with unfairness." *See Donnelly*, 416 U.S. at 643. Furthermore, the weight of the evidence against Petitioner underscores this conclusion. *See Black 2009 II* at *6 (referring to the Confession; the bullet casing found at the Quick Chek, which matched the gun in The Stopped Vehicle; and the masks and gloves on the floor of that car).

Ground Four is denied in its entirety.

## E. **Ground Five: (1) Denial Of Fair Trial; and (2) Ineffective Assistance Of Counsel**

Ground Five asserts two general types of claims: (1) denial of Petitioner's Sixth Amendment right to a fair trial by an impartial jury ("Fair Trial Claim"); and (2) ineffective assistance of trial and appellate counsel ("IAC Claim"). (ECF No. 1 at 14; ECF No. 1-2 at 12-33.) Each of those two claims asserts distinct sub-claims.

Specifically, Petitioner's Fair Trial Claim argues that: (a) some of the jurors were sleeping during the trial ("Sleeping Jurors Issue"); (b) one of the jurors spoke with a police officer witness during a side-bar conference ("Outside Influence Issue"); (c) the trial judge improperly commented to jurors about testimony weight and juror sleeping ("Comment Issue"); (d) the trial judge improperly gestured to a juror during testimony ("Gesture Issue"); and (e) the trial judge nodded off during trial ("Attention Issue"). (ECF No. 1-2 at 12-31.)

Petitioner's IAC Claim argues that trial counsel was ineffective for: (a) failing to seek additional voir dire regarding jury misconduct ("Voir Dire Issue"); (b) failing to seek removal of those jurors ("Removal Issue"); and, (c) failing to seek a mistrial resulting from purported juror misconduct ("Mistrial Issue"). (*Id.* at 25 and 32-33.)

### 1. Fair Trial Claim: Sleeping Jurors Issue Regarding Jurors Two, Six, And Eight

On the third day of trial, the prosecutor told the judge that the State's attorney "felt juror number eight ["Juror Eight"] either had her eyes closed or was sleeping" during Officer Simmons's testimony. (ECF No. 8-23 at 145-46.) It was unclear whether Juror Eight had actually fallen asleep. The prosecutor requested that Judge Perfilio "do whatever you feel appropriate" as a corrective measure. (*Id.* at 146.) Judge Perfilio stated that he had "also noticed" that Juror Eight speaking to another juror during testimony. (*Ibid.*) Judge Perfilio voir dired Juror Eight on both issues, as follows:

> COURT: Are you having trouble keeping awake?
>
> JUROR EIGHT: I'm tired.
>
> COURT: [D]o you think you would be capable of paying attention to the witnesses?
>
> JUROR EIGHT: I'm listening. I do hear everything going on.
>
> COURT: I'm just concerned about that. Also I noticed at one point while there was a witness on the stand you were talking to the one person next to you.
>
> JUROR EIGHT: I said I was cold. You saw me.

(ECF No. 8-24 at 2-4.) Judge Perfilio instructed Juror Eight that if she was having trouble concentrating or keeping awake, she would "need to try to pay attention." (*Id.* at 4.) In conclusion, Judge Perfilio asked Juror Eight "Do you think you'll have any trouble

with this case or not? I mean, deliberating fairly as to both sides?" She replied: "I don't feel I have any trouble, but you know, after a while, it's antsy sitting here so long." (*Id.* at 6.)

When questioned by Judge Perfilio about allegedly trying to speak with someone in the courtroom, Juror Eight responded that she had tried to say "hi to [a] friend." (*Id.* at 3.) Judge Perfilio admonished her not to talk to anyone, in order to "keep the trial as pure and clean of any possibl[e] influence." (*Ibid.*)

Judge Perfilio similarly voir dired juror numbers two ("Juror Two") and six ("Juror Six"), who had been observed with their eyes closed. (*Id.* at 6-9.) Juror Two denied sleeping but said that "[i]t does get a little repetitious ... I mean, I'm not going to say I am nodding, but I'm trying to catch myself." (*Id.* at 7-8.) Juror Six admitted: "You caught me and I have caught myself. You know, you're right, you've seen me nod out a little bit." (*Id.* at 9.) Judge Perfilio reminded Jurors Two and Six of the importance of paying attention to the testimony. He stated: "Once I had a case here where a juror could not deliberate because they couldn't remember some testimony because they fell asleep during the trial." (*Id.* at 4.) The judge instructed jurors to raise their hands if they could not hear or were having trouble concentrating. (*Id.* at 7, 9-10, and 17.)

Following this first voir dire of Jurors Two, Six, and Eight[13] ("First Voir Dire"), the prosecutor asked Judge Perfilio to excuse Juror Eight. The State "[did not] know what [Juror Eight] caught, what she missed" during testimony. (*Id.* at 11.) Judge Perfilio again brought Jurors Two, Six, and Eight out for further voir dire ("Second Voir Dire"). (*Id.* at 14-17.[14]) Each of these jurors stated that they heard all the testimony. (*Id.* at 15.) Ultimately, Juror Eight was designated as an alternate and did not contribute to any of the jury's deliberations or findings. Defense counsel never objected to how the court conducted voir dire. (ECF No. 8-28 at 45; ECF No. 8-10 at 15.)

Petitioner did not raise the Sleeping Jurors Issue during direct appeal. (*See* ECF No. 1-2 at 33.) Thus, during PCR proceedings, the PCR court rejected the Sleeping Jurors Issue as procedurally barred under New Jersey Rule of Court 3:22-4.[15] (ECF No. 8-10 at 10-12.) The PCR court nevertheless proceeded to address

---

[13] Judge Perfilio's First Voir Dire of Jurors Two, Six, and Eight also included voir dire of juror number one for supposedly talking to a witness, as discussed in the next section of this Opinion, *infra*. (ECF No. 8-24 at 9-11.)
[14] The Second Voir Dire also included Juror One, in addition to Jurors Two, Six, and Eight. (ECF No. 8-24 at 14-17.)
[15] "Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds: that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding." New Jersey Rule of Court 3:22-4(a)(1).

-- and reject -- the Issue's merits. The court did so under the rubric of IAC rather than the Sixth Amendment. (*Id.* at 11-13; ECF No. 8-15 at 5-6.) The Appellate Division affirmed, substantially for the reasons expressed by the PCR court. (ECF No. 8-15 at 7.)

The Sleeping Jurors Issue will be denied because it is procedurally defaulted and is, in any event, without merit.

First, as to procedural default, a federal court may not grant habeas relief if the state court's decision rests on a prisoner's violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Federal courts may not consider the merits of such procedurally defaulted claims unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate "cause" in this context, the circumstance must be something external to the petitioner that cannot fairly be attributed to

40

him. *Leyva*, 504 F.3d at 366 (internal citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate fundamental miscarriage of justice in this context, a petitioner must typically show "actual innocence." *Leyva*, 504 F.3d at 366 (internal citation omitted).

New Jersey Rule of Court 3:22-4[16] is an adequate and independent state procedural rule. It is clearly established and regularly followed in New Jersey. *See, e.g.*, *Hamilton v. Nogan*, No. 16-5705, 2019 WL 4451440, at *11 (D.N.J. Sept. 17, 2019) (citing *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999) and *Egipciaco v. Warren*, No. 12-4718, 2015 WL 790108, at *3-4 (D.N.J. Feb. 25, 2015)); *David v. D'Ilio*, No. 2017 WL 5951702, at *9 (D.N.J. Nov, 30, 2017) (citing *Cabrera*, 175 F.3d 307).

---

[16] "Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds: (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey." N.J. Ct. R. 3:22-4.

Petitioner not having raised the Sleeping Jurors Issue on direct appeal, and the PCR court having rejected it on that basis, the Issue is, therefore, procedurally defaulted. The state court's decision plainly states that an independent and adequate state law ground bars that Issue. *See Coleman*, 501 U.S. at 737; *Walker v. Martin*, 562 U.S. 307, 316 (2011). In addition, Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice, to excuse his procedural default. *See Coleman*, 501 U.S. at 737. In his Petition, traverse, and supporting materials, Petitioner has not demonstrated: that his violation of N.J. Ct. R. 3:22-4 resulted from factors beyond his control; an external factor impeded his efforts with respect to his claim; actual prejudice; or actual innocence of the crimes. (ECF Nos. 1 and 1-2.) *See Leyva*, 504 F.3d at 366.

The Sleeping Jurors Issue is denied as procedurally defaulted.

This Court's discussion of that Issue will, however, further consider the fact that the Appellate Division affirmed the PCR court's alternative bases for the Sleeping Jurors Issue ruling -- *i.e.*, (1) procedural default; and (2) failure on the merits. (*See* ECF No. 8-10 at 10-11.) This Court will, therefore, address the state court's alternate merits-based rationale. The further analysis, however, does not alter the result for Petitioner.

With respect to whether Petitioner was deprived of a constitutional right as a result of purportedly sleeping jurors, "[t]he United States Supreme Court has opined that 'a federal court's review into ... a criminal jury's deliberations is a decidedly limited enterprise,' primarily because '[a]llegations of juror misconduct, incompetency, or inattentiveness ... seriously disrupt the finality of the [trial] process.'" *Durham v. Phelps*, No. 07-370, 2009 WL 3271370, at *7 (D. Del. Oct. 9, 2009) (quoting *Tanner v. United States*, 483 U.S. 107, 120 (1987)). "Sleeping is a form of jury misconduct, and a defendant must demonstrate both that the juror in question ignored an essential portion of the trial and that the defendant was prejudiced by the juror's misconduct." *United States v. Sheika*, No. 05-cr-67, 2005 WL 2562969, at *4 (D.N.J. Oct. 7, 2005), *aff'd*, 304 F. App'x 135 (3d Cir. 2008) (internal citations omitted); *see also Gaston v. MacFarland*, No. 04-1168, 2005 WL 1828660, at *7 (D.N.J. July 29, 2005). A sleeping juror should be removed if the sleep has made it "'impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial.'" *Gaston*, 2005 WL 1828660, at *7 (citation omitted). However, "[a] defendant's 'general assertion that jurors slept through parts of the critical presentation of the defendant's evidence and cross examination are too vague to establish prejudice.'" *Id.* (citation omitted). Under

these well-established principles, the Sleeping Jurors Issue fails on the merits for two reasons.

First, Petitioner has not shown that Jurors Eight, Two, or Six Slept through substantive elements of either party's case. Given the unconfirmed and inconsistent juror sleeping sightings among the judge, counsel, and Petitioner, "[s]ome greater indication than is currently in the record that [the juror] was, in fact, asleep, as opposed to daydreaming or concentrating with eyes shut, would have significantly strengthened the argument that a hearing was warranted." *See Ciaprazi v. Senkowski*, 151 F. App'x 62, 64 (2d Cir. 2005). Even if one or more of Jurors Two, Six, or Eight were sleeping, Petitioner has not demonstrated that it occurred during a portion of trial essential to constitutionally adequate deliberations. Much, if not all, of the Sleeping Jurors Issue revolves around day three of the trial. The following witnesses testified that day: (1) LaRenda Pridgen-Parrish, a Quick Chek employee who had been working the night of the robbery (ECF No. 8-23 at 76-91); (2) Sergeant Harry Capko, who responded to the Quick Chek Robbery scene (*id.* at 91-112); (3) Officer Paulette Simmons, who also responded to the Quick Chek Robbery (*id.* at 112-31; (4) Officer Barry Cohen, who had been on patrol on April 28 and sighted The Stopped Vehicle (*id.* at 132-45); and (5) Sergeant Frank Marano, who assisted Officers DiGena and Coleman at The Stopped Vehicle. (*Id.* at 2; ECF No. 8-17 at 28-29.) The record

44

suggests that examination of each witness did encompass certain lines of questioning that were not dispositive as to guilt. (*See*, *e.g.*, ECF No. 8-23 at 92 (establishing Sergeant Capko's employment history); *id.* at 112 (Officer Simmons's law enforcement history).) Even if a juror had been sleeping at those times, he or she ultimately received relevant and dispositive robbery evidence for deliberations. Petitioner has not demonstrated otherwise.

This situation is not so significant as to deprive Petitioner of his right to a fair trial. *See, e.g., Gaston*, 2005 WL 1828660, at *7; *Morfiah v. City of Philadelphia*, 667 F. App'x 782, 784 (3d Cir. 2016); *Burns v. Warren*, No. 13-1929, 2016 WL 1117946, at *25-26 (D.N.J. Mar. 22, 2016). Underscoring this conclusion is the fact that Judge Perfilio took extra care as to the three subject jurors, as described above. (ECF No. 8-10 at 13; ECF No. 8-15 at 2-3; ECF No. 8-24 at 2-10 and 17.) *See State v. Smith*, 2012 WL 2196669, at *3 (N.J. Super. Ct. App. Div. June 18, 2012). *See also United States v. Ortiz*, No. 92-0592, 1993 WL 303286, at *2 (E.D. Pa. Aug. 5, 1993) *aff'd*, 27 F.3d 560 (3d Cir. 1994) (collecting cases). The generalized claim of jurors "nodding off a little bit" with "closed ... eyes" (ECF No. 1-2 at 16) does not undermine the Appellate Division's factual determination about "the absence of direct evidence that the juror actually slept through critical portions of the trial." *See Smith*, 2012 WL 2196669, at *4. This Court presumes, as it must, that the state court determined

correctly that jurors did not sleep at trial. 28 U.S.C. §
2254(e)(1).

Second, the state court's decision on how to address the
Sleeping Jurors Issue was not contrary to any federal precedent.
Petitioner has not cited, and this Court has not found, any United
States Supreme Court decision that either: mandates an inquiry
into every instance of juror misconduct; delineates when a trial
judge must inquire further about juror misconduct, and to what
extent; or determines that an allegedly sleeping juror's
deliberation is *per se* unconstitutionally violative of the right
to fair trial. Rather, trial courts enjoy "considerable discretion
in deciding how to handle a sleeping juror." *See Freitag*, 230 F.3d
at 1023.

Ground Five is denied to the extent it relies on the Sleeping
Jurors Issue.

### 2. Fair Trial Claim: Outside Influence Issue

Judge Perfilio received information on the third day of trial
that juror number one ("Juror One") "may have been speaking to
[and laughing with] the witness, the police officer [Simmons,] ...
while [the court] was doing a sidebar conference." (ECF No. 8-24
at 2; *see also* ECF No. 8-23 at 117-18; ECF No. 1-2 at 24.) Judge
Perfilio voir dired Juror One "to make sure we know what is going
on" (ECF No. 8-24 at 2):

COURT: [D]uring the course of one of ours sidebar conferences, it was noted by one of the court staff that it looked like you were speaking to the police officer witness.

JUROR ONE: No.

COURT: Okay. You cannot under any circumstances communicate with the witnesses, even a nod or a hi or any of that.

JUROR ONE: I did nod to one of them. I can tell you, forget who it was. I know I did nod to someone like a smile to the person.

COURT: The only thing is we're trying to keep the integrity of the trial on that basis, that you're not a buddy to anyone. You're here to listen to the witnesses, make a judgment about what you think about them, and that's all I want to bring to your attention.

JUROR ONE: I'm a reflexive smiler. That's why I'll be aware of it in the future. Sure.

COURT: Just try to keep that in control. You seem like a very gregarious person and that's fine, but you can't do that with the witnesses, okay?

JUROR ONE: Okay.

(ECF No. 8-24 at 9-11.)[17]

---

[17] To the extent Petitioner's § 2254 Petition seeks to allege that Juror One was among the allegedly sleeping jurors (*see* ECF No. 1-2 at 16-18 and 25), this Court notes that Judge Perfilio also took corrective action as to Juror One on the issue of purported juror sleeping. During the court's Second Voir Dire (*see* ECF No. 8-24 at 14-17), Juror One stated: "I have to admit I didn't see everything when the pictures were up here, but I'm assuming that we'll have an opportunity to look at those later?" (*Id.* at 15.) Juror One asked whether he would be able to look at the photographic evidence. (*Id.* at 17.) Judge Perfilio assured him that he would. (*Ibid.*)

The PCR court rejected the Outside Influence Issue, finding that it "rests squarely on the issue of the trial judge's discretion." (ECF No. 8-10 at 14 (construing Petitioner's PCR petition as "framing th[e] argument as ineffective assistance of counsel).) The PCR judge explained: "The issue was addressed by the trial judge and handled properly, and a proper instruction was given to juror number one." (*Ibid.*) The Appellate Division affirmed, substantially on the basis of the PCR court's "thorough" written opinion. (ECF No. 8-15 at 2 and 7.)

The Outside Influence Issue does not merit habeas relief.

The Sixth Amendment guarantees every criminal defendant "the right to a ... trial[ ] by an impartial jury." U.S. Const. amend. VI. Complementing this right are the Fourteenth Amendment's Due Process Clause protections. Those safeguards have "long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois,* 504 U.S. 719, 727 (1992); *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). *See also State v. Williams*, 459 A.2d 641 (N.J. 1983).

In a criminal case, any private communication with a juror during trial about the matter pending before the jury is deemed presumptively prejudicial. *Remmer v. United States,* 347 U.S. 227, 229 (1954). The burden rests on the government to establish after

48

hearing and notice that such contact was harmless. *Remmer*, 347 U.S. at 229. In *Rushen v. Spain,* 464 U.S. 114 (1983), the Court recognized that an *ex parte* communication with a juror may be harmless. "[T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation ... [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen*, 464 U.S. at 118 (quoting *Smith v. Phillips,* 455 U.S. 209, 217 (1982)).

In Petitioner's case, the trial court conducted a voir dire in the presence of both parties' counsel. Juror One flatly denied having any conversation at all with Officer Simmons, much less a conversation regarding any "matter pending before the jury." *See Remmer*, 347 U.S. at 229. (ECF No. 8-24 at 9-11 (Juror One stated that he only "nodded" to the witness merely because Juror One was instinctively a "reflexive smiler").)

Federal appellate courts apply the abuse of discretion standard when reviewing decisions as to how to proceed in response to allegations of juror misconduct. *United States v. Fattah*, 914 F.3d 112, 147 (3d Cir. 2019). "This is so because 'the trial court is in a superior position to observe the mood at trial and the predilections of the jury.'" *Ibid.* (citing *United States v. Resko*, 3 F.3d 684, 690 (3d Cir. 1993)). Juror One's response at the Second Voir Dire satisfied the trial court that the juror had not

conversed with Officer Simmons about a matter pending before the jury in a manner that: unfairly prejudiced Petitioner; or denied him an impartial jury. (*See* ECF No. 8-24 at 9-11.) The state court's rejection of the Outside Influence Issue was not an unreasonable application of clearly established federal law.

Of further note is the fact that Judge Perfilio found Juror One could fairly deliberate, and he admonished Juror One against visual or verbal interaction with witnesses as trial went forward. Juror One readily agreed to refraining from innocuous "nodding" to witnesses for the remainder of the trial. (ECF No. 8-24 at 9-11.) The Appellate Division found that "a proper instruction was given to [J]uror [O]ne." (ECF No. 8-10 at 14.) Nothing in the record suggests that Juror One transgressed Judge Perfilio's directive.

This Court finds that it was objectively reasonable for the Appellate Division to affirm Judge Perfilio's Outside Influence Issue ruling. Petitioner has not demonstrated that: Juror One was unable to render an impartial verdict based only on the evidence and the court's instructions; or the supposed interaction between Juror One and Officer Simmons during the sidebar related to any "matter pending before the jury." *see Remmer,* 347 U.S. at 229. This Court sees no evidence in the record suggesting that it did.

Ground Five is denied to the extent it relies on the Outside Influence Issue.

### 3. Fair Trial Claim: Comment Issue

Petitioner argues that Judge Perfilio made the following improper comments: (1) telling Juror Eight that "only some of the witnesses are critical" (ECF No. 1-2 at 18); and (2) telling the jury that the judge himself "had been nodding off during the course of this trial," which Petitioner contends "condone[d] sleeping in the court." (*Ibid.*)

At trial, Judge Perfilio told Juror Eight during voir dire:

> If you're having trouble concentrating or keeping awake, ... if something is boring, sometimes it is, don't get me wrong, I nod off occasionally in these cases, but we need to try to pay attention because some of the witnesses are critical. Once I had a case where a juror could not deliberate because they couldn't remember some of the testimony because they fell asleep during the trial. So, that's all I'm trying to protect [--] the validity of the trial.

(ECF No. 8-24 at 4 ("Juror Eight Comment").)

Judge Perfilio similarly told Juror Two:

> If you're having trouble concentrating, raise your hand so I can try to move it along. The problem is if people fall asleep, that's what I was saying before, we once had a case here where one of the jurors did nod off probably more other than others, and as a consequence when it came time to deliberat[e] that juror couldn't remember half of the testimony. So that's what's important for us, to make sure, guarantee the integrity of the trial. [I]f you're having trouble, let me know. I can give you a break or give everyone a break, get some coffee, or something like that.

(ECF No. 8-24 at 7 ("Juror Two Comment").)

51

Judge Perfilio analogously told Juror Six during voir dire:

> I'm bringing people out I seem to notice who
> are having a little problem concentrating or
> staying awake, and we had a situation like
> this once before in a jury trial where one of
> the jurors apparently had nodded more than the
> others and went in to deliberate and couldn't
> deliberate because they couldn't remember the
> testimony ... [I]f you're having trouble
> concentrating, raise your hand and I'll give
> you a break.

(*Id.* at 8-9 ("Juror Six Comment").)

The PCR court rejected the Comment Issue, ruling: "This Court does not find these comments made to the jurors individually were improper ... [The comments] served as a reminder for each of th[e] [jurors] to stay awake and pay attention without embarrassing any of them." (ECF No. 8-10 at 16.) Petitioner did not raise the Comment Issue during appeal of PCR denial. *See Black* 2016 at \*2; ECF No. 8-15 at 6-7 (on appeal of PCR denial, Petitioner challenged the Jurors Two, Six, and Eight Comments as IAC, not fair trial, claims).

This Court finds that the Comment Issue is not only unexhausted but also without merit, in any event.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective..." 28 U.S.C. § 2254(b)(1). *See also Rose v.*

*Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. *See Cranberry v. Greer*, 481 U.S. 129 (1987); *Rose*, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. *See Rose*, 455 U.S. at 519.

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). Once a petitioner's federal claims have been fairly presented to the state's highest court, exhaustion is satisfied. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The petitioner generally bears the burden to prove all facts establishing exhaustion. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

The Comment Issue in Ground Five's Fair Trial Claim raises the trial judge remarks argument he raised in his PCR petition. (ECF No. 1-2 at 18; *Black 2016* at *2; ECF No. 8-10 at 16.) However, Petitioner did not appeal the Comment Issue as a fair trial claim to the Appellate Division, and he did not seek certification from the New Jersey Supreme Court. (*See* ECF No. 8-15 at 6-7.) Therefore, the Comment Issue appear unexhausted.

To the extent that the Comment Issue in Ground Five's Fair Trial Claim was not fairly presented to all levels of state court and is thus unexhausted, this Court can nevertheless deny it on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005). This Court is free to deny the Comment Issue on the merits, and the Court does so for the following reasons.

Petitioner challenges the Jurors Two, Six, and Eight Comments as "improper instruct[ions]" to the jurors. (ECF No. 1-2 at 18.)

No matter how Petitioner frames the matter, however, habeas allegations of state trial improprieties are not reviewable unless: the error resulted in a fundamentally unfair proceeding; and thus violated a petitioner's due process rights. *Estelle*, 502 U.S. at 72-73. *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner has not made the requisite constitutional showing of fundamental unfairness here. Judge Perfilio made the Jurors Two, Six, and Eight Comments before the court's final detailed charges to the entire jury. (ECF No. 8-10 at 16; ECF No. 8-24 at 4-9.) The Jurors Two, Six, and Eight Comments "served [merely] as a reminder for each of the[] [three particular jurors] to stay awake and pay attention, without embarrassing any of them." (ECF No. 8-10 at 16.) A review of Judge Perfilio's jury charges as a whole, including his preliminary and final instructions (*see* ECF No. 8-28 at 1-49[18]), reveals that he did *not*, as Petitioner alleges, condone juror sleeping. Rather, Judge Perfilio: instructed all of the jurors that they were to pay attention to all the evidence because they were the triers of the facts; and deemed critical the testimony of all witnesses. (*See, e.g.*, ECF No. 8-20 at 5 and 8;

---

[18] "A lot of judges say ... the most important function [of the jury] ... really is listening to the evidence, and I think you paid very strict attention to the evidence, which we all appreciate ... [L]et me express my thanks and appreciation for you attention in the case ... You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses, and the weight to be attached to the testimony of each ... You are judges of the facts" (ECF No. 8-28 at 3-4, 9, and 42.)

ECF No. 8-21 at 3-4, 10 ("Since you're the sole judges of the facts, you must pay close attention to the testimony. It's important that you carry with you into the jury room not only a clear recollection of what the testimony was but also a recollection of the manner in which it was given. It will be your duty to pay careful attention to all of the testimony"), and 14; ECF No. 8-28 at 10 ("[I]t really is your recollection of the facts that really counts in the case").

Reviewing this record as a whole then, it is abundantly evident that the Jurors Two, Six, and Eight Comments did not prejudicially impact the trial's overall fairness to Petitioner. The Comments served as individual reminders to Jurors Two, Six, and Eight to stay awake and pay attention. It is reasonable to construe the Comments as: acknowledging the demands placed upon jurors' attention; and trying to put jurors at ease while simultaneously underscoring the significance of their attention. It is absurd to claim that those comments prejudiced Petitioner or changed the outcome at trial. They simply emphasized the indispensability of jurors' attention during trial. Judge Perfilio's passing references to himself having experienced the challenges of uninterrupted attention during trial merely acknowledged the human side of jury service. It strains credulity to think, as Petitioner suggests, that Judge Perfilio condoned sleeping. Furthermore, viewed in an objectively reasonable manner,

Judge Perfilio's use of "some" with respect to witness significance was conversational, not literal. (*See* ECF No. 8-20 at 5 and 8; ECF No. 8-21 at 3-4, 10, and 14; ECF No. 8-28 at 10.)

Ground Five is denied to the extent it relies on the Comment Issue.

### 4. Fair Trial Claim: Gesture Issue

Petitioner argues that the trial judge unconstitutionally made "some sort of a gesture to [J]uror [E]ight when he noticed [J]uror [E]ight talking with another juror." (ECF No. 1-2 at 18.)

During Judge Perfilio's voir dire of Juror Eight, the following exchange occurred on the record:

> COURT: I'm just concerned about [you hearing everything that is going on]. Also I noticed at one point while there was a witness on the stand you were talking to the one person next to you.
>
> JUROR EIGHT: I said I was cold. You saw me.
>
> COURT: Okay. Because you looked at me, I went like that, with a smile. It was cold.

(ECF No. 8-24 at 3.)

The PCR judge, "[i]n looking at the [trial] transcript," rejected the Gesture Issue:

> [T]here is no evidence of impropriety. The trial judge simply acknowledged that a juror was cold in the courtroom ... [T]he trial judge acknowledging the temperature of the courtroom and smiling is not outside the normal bounds of behavior and does not in any way ... violate [the] impartiality mandate [of] *State v. Ray*, 43 N.J. 19, 25 (1964).

(ECF No. 8-10 at 16-17.) Petitioner's § 2254 Petition again challenges, but does not specifically describe, the trial judge's alleged gesture during Juror Eight's voir dire. (ECF No. 1-2 at 36 ("it appears that the trial judge smiled, and even made some sort of a gesture, to [J]uror [N]umber [E]ight").)

This Court finds the state court's ruling on the Gesture Issue to be objectively reasonable. Petitioner has not identified anything in the record that demonstrates Judge Perfilio's purported gesture was so prejudicial that it violated due process. There is nothing in the record suggesting that the challenged gesture was anything more than acknowledgment of courtroom temperature. (*See* ECF No. 8-24 at 3.) It cannot reasonably be construed as conveying to the jury that the judge was partial to the State's case. Although the jury's impression and not the judge's actual motivation is what matters for this Court's inquiry, the Court is confident that, when considered in context, the alleged gesture was superficial and meaningless in terms of trial constitutionality. Petitioner does not identify anything in the record indicating that the non-verbal and temperature-related gesture: (1) could be construed by the jury as a statement indicating bias in favor of the State's case, or (2) otherwise overstepped propriety. *See Glenn,* 743 F.3d at 407; *Romano,* 512

U.S. at 12-13. The Appellate Division's ruling as to the Gesture Issue was not inconsistent with any Supreme Court precedent.

Ground Five is denied to the extent it relies on the Comment Issue.

### 5. **Fair Trial Claim: Attention Issue**

Petitioner argues that Judge Perfilio "admitted on the record that he had also been nodding off during the course of [Petitioner's] trial." (ECF No. 1-2 at 18.) Petitioner does not identify any portion of the trial transcript at which he alleges the trial judge in fact dosed off. (*Ibid.*)

During voir dire of Juror Eight, Judge Perfilio told her:

> COURT: If you're having trouble concentrating or keeping awake, if you could [let me know][.] I'll try and keep an eye[.] [I]f we're bothering you, if something is boring, sometimes it is, don't get me wrong, I nod off occasionally in these cases, but we need to try to pay attention because some of the witnesses are critical ...

(ECF No. 8-24 at 4.)

In a colloquy with defense counsel and the prosecutor outside the jury's presence regarding jury attentiveness, Judge Perfilio stated: "[I]t did seem to the court [during] this afternoon's session the only one who was nodding a little more was number seven. I was too, so I can't tell. I think she was listening." (ECF No. 8-24 at 91.)

The PCR court found "no evidence of the trial judge actually sleeping during the proceedings." (ECF No. 8-10 at 17.) Rather, Judge Perfilio's "own comment about perhaps nodding off in 'these cases' when speaking with [J]uror [Eight] was said as part of his additional voir dire of said juror who may have been losing her ability to pay attention and again during a conversation with [counsel] without the jury being present." (*Ibid.*) The Appellate Division agreed with the PCR judge. (ECF No. 8-15 at 6-7 ("This statement by the judge [that 'I was (nodding) too'] does not indicate that he was asleep, only that the judge was 'nodding." Defendant points to no other indication that the judge was not alert or was not in control of the proceedings at all times").)

This Court's careful review of the record indicates that Petitioner's Attention Issue is at odds with the trial transcripts. Nothing in the record suggests, much less demonstrates, that Judge Perfilio was actually dozing or otherwise inattentive during any portion of Petitioner's trial. Rather, he: (1) ruled on issues raised at sidebars (*see, e.g.*, ECF No. 8-22 at 47; ECF No. 8-23 at 63-68; ECF No. 8-25 at 33 and 50-52; ECF No. 8-25 at 109-12); (2) ruled on objections made by counsel (*see, e.g.*, ECF No. 8-22 at 52-53; ECF No. 8-23 at 30, 55, 59, 108-09, 117-18, and 121-22; ECF No. 8-25 at 73-74, 76, 80, and 108; ECF No. 8-27 at 58-59, 103, 113-14, and 117); (3) interjected to clarify issues that the Judge himself identified in counsel's questioning or witnesses' answers

(*see, e.g.*, ECF No. 8-23 at 72, 75-76, and 124; ECF No. 8-24 at 193-94 and 230-31; ECF No. 8-25 at 14, 17, 24, and 48); (4) ruled on counsel's requests for clarifications (*see, e.g.*, ECF No. 8-25 at 53-55; ECF No. 8-27 at 47-48); (5) responded to all requests to move documents into evidence, publish them for the jury, and properly identify them for the record (*see, e.g.*, ECF No. 8-23 at 44, 54, 98, and 103; ECF No. 8-24 at 169-73, 177, 187, 218-19, and 239; ECF No. 8-25 at 26-28 and 43; ECF No. 8-26 at 42; ECF NO. 8-27 at 22); (6) ruled on the admission of each expert witness's testimony (*see, e.g.*, ECF No. 8-25 at 15-16; ECF No. 8-26 at 29); and (7) directed witnesses to speak loudly enough for jurors to hear (*see, e.g.*, ECF No. 8-24 at 168-69, 182, and 211; ECF No. 8-25 at 5, 9, 13, 18, 20, 22, and 47; ECF No. 8-26 at 18).

Collectively considered, these occurrences in the trial record convince this Court that Petitioner's Attention Issue is a frivolous and superfluous claim not warranting further discussion. Judge Perfilio was not only present and engaged at trial, but he also actively and appropriately guided the proceedings to ensure jurors could hear and see evidence as it was presented. As the Appellate Division reasonably determined, Petitioner "has not shown any actions or inaction by the trial judge deprived him of a fair trial." (ECF No. 8-10 at 17.)

In short, Petitioner has not demonstrated that the state court judge's level of attentiveness at trial "deprived [Petitioner] of

fundamental elements of fairness in his criminal trial, *see Glenn,* 743 F.3d at 407, or "was so prejudicial that it rendered the trial fundamentally unfair, *see Romano,* 512 U.S. at 12-13.

Ground Five is denied to the extent it relies on the patently frivolous Attention Issue.

### 6. IAC Claim: Voir Dire Issue And Removal Issue

Petitioner argues that trial counsel rendered IAC by: (1) not seeking additional voir dire of Jurors One and Eight after the First Voir Dire and Second Voir Dire (ECF No. 1-2 at 16, 19, 25, and 32[19]) ("Voir Dire Issue"); and (2) failing to seek the removal of Juror One for purportedly speaking with a trial witness. (ECF No. 1-2 at 19, 25, and 32 ("Removal Issue").) Given their inter-related underlying facts, the Court considers the merits of these two issues together.

The Court incorporates here its detailed descriptions *supra* of the trial record regarding the First and Second Voir Dires. (*See* ECF No. 8-24 at 1-17; ECF No. 8-10 at 14-15.)

---

[19] "[J]uror [O]ne was speaking and laughing with police officer [trial witness] Paulette Simmons during one of the sidebar conferences ... [C]ounsel was ineffective for not requesting that the trial court further voir dire [J]uror [One], and possibly the entire jury panel, to determine whether the jurors were tainted ... [A]t a minimum, [Juror Eight's] eyes were closed during some of the testimony ... [T]rial counsel was totally ineffective for not seeking additional voir dire." (ECF No. 1-2 at 16, 25, and 32.)

The PCR court found the Voir Dire Issue and Removal Issue were precluded by N.J. Ct. R. 3:22-4(a) but nonetheless considered their merits. (ECF No. 8-10 at 11-12, 15, and 19.) The PCR judge rejected both Issues because Petitioner had failed to show the deficient performance prong for an IAC claim under governing federal precedent. (*Id.* at 12.) The Appellate Division affirmed, for the reasons expressed by the PCR judge. (ECF No. 8-15 at 7.)

This Court finds that the Voir Dire Issue and Removal Issue fail on the merits.

To set forth a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an IAC claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

Even where a petitioner is able to show that counsel's representation was deficient, a petitioner must still

63

affirmatively demonstrate that counsel's deficient performance prejudiced the defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. A petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either prong defeats an [IAC] claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Finally, when a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.*

(internal quotation marks omitted) (emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of IAC claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S. Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

In Petitioner's case, both the PCR court and the Appellate Division first correctly set forth the governing constitutional standard for IAC claims. (ECF No. 8-10 at 8-10 (citing *Strickland v. Washington*, 466 U.S. 668 (1984) and *State v. Fritz*, 519 A.2d 336 (N.J. 1987); ECF No. 8-15 at 3-4 (same).) The PCR judge then rejected the Voir Dire Issue's contention that "counsel was per se ineffective for failing to seek additional voir dire regarding alleged jury misconduct." The PCR court explained as follows:

> [T]rial counsel did not need to request additional voir dire of the jurors because it was requested by the prosecutor and performed by the court. The court twice voir dired the jurors who allegedly were sleeping and otherwise misbehaved. [N]one indicated an inability to fairly deliberate. Additionally, the judge took corrective measures to remedy any concerns.

(ECF No. 8-10 at 8-10, 12-14, 16, and 19 (Petitioner "fails to establish a prima facie case" of IAC).) The Appellate Division

65

agreed that Petitioner had "failed to carry his burden" of showing *Strickland*'s first prong of counsel's deficient performance. (*Id.* at 7.)

The PCR court similarly rejected the Removal Issue based on Petitioner's failure to show the defective performance prong of an IAC claim. (ECF No. 8-10 at 15 and 19.) The PCR judge explained:

> The prosecutor wanted [J]uror [E]ight removed, but Petitioner's trial counsel wanted her to stay on, citing to the court's curative instructions to this juror and her perceived attentiveness to the issues. Therefore, not only was this issue addressed by the court, but trial counsel made a reasonable strategic decision to argue against [J]uror [E]ight's removal.

(*Id.* at 15.) The Appellate Division affirmed. (ECF No. 8-15 at 7.)

This Court finds that the state courts did not unreasonably apply clearly established law as determined by the United States Supreme Court. During PCR proceedings, Petitioner did not demonstrate *Strickland*'s deficient performance prong as to the Voir Dire and Removal Issues. Petitioner has not done so on habeas review, either.

Judge Perfilio questioned each juror separately during the First and Second Voir Dires. None admitted to sleeping during evidence presentation or to talking with trial witnesses. Judge Perfilio determined that nothing improper had taken place, and he found no evidence of juror bias (ECF No. 8-10 at 13-14 ("None indicated an inability to fairly deliberate").) Juror sleeping and

juror removal are issues that rest "squarely in the trial judge's discretion" (*id*. at 14), and the judge took measures to respond accordingly. In fact, Judge Perfilio not only *acted* as to the alleged juror misconduct but did so *thoroughly* -- *e.g.*, two thorough voir dires and follow-up directives. (*See* ECF No. 8-10 at 13.) Petitioner's Voir Dire Issue and Removal Issue seek, in essence, to demand that counsel should have sought a third voir dire. Nothing in the trial record suggests that such was warranted. Given these circumstances, it was objectively reasonable for trial counsel to not seek a third voir dire or to not seek removal of the purportedly suspect jurors. Accordingly, there was "no argument that failure to argue for further questioning of the juror[s] f[e]ll outside the expected performance of reasonable counsel." (ECF No. 8-10 at 14.)

For these reasons, it cannot be said that counsel's conduct in not seeking a third voir dire or removal was "an error so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. Petitioner has not shown that trial counsel's representation "fell below an objective standard of reasonableness" under the circumstances." *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

Furthermore, counsel's decision not to seek removal of Juror Eight was a strategic decision, which: (1) is generally afforded great deference on review, *U.S. v. Dretke*, 540 U.S. 668, 700-01

(2005); *Strickland*, 466 U.S. at 690-91; *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983); and (2) must be "[e]valuat[ed] from counsel's perspective *at the time*," *Strickland*, 466 U.S. at 689 (emphasis added) -- as the PCR court did in this case. (ECF No. 8-10 at 15 ("trial counsel made a reasonable strategic decision to argue against [J]uror [E]ight's removal").)

In short, Petitioner has not shown *Strickland*'s first prong. The state courts' rulings on the Voir Dire Issue and Removal Issue were not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1)-(2). These issues in Ground Five's Fair Trial Claim will be denied on the merits.

### 7. IAC Claim: Mistrial Issue

Petitioner argues that trial counsel rendered IAC "for not seeking a mistrial" based on: the Sleeping Jurors Issue; the Outside Influence Issue; and "improper discussions between the jurors." (ECF No. 1-2 at 37, 41, 43, and 50.)

Petitioner based the Mistrial Issue during direct appeal upon "counsel['s] not seeking a mistrial after an unanticipated break of several days in the trial due to a government shutdown following a scheduled holiday hiatus." (ECF No. 8-15 at 7.) The Appellate Division rejected his argument because he "point[ed] to no resulting demonstrable prejudice flowing from this state-wide [shutdown] occurrence." (*Id.* at 7.)

During PCR proceedings, Petitioner raised the shutdown issue both as a claim of denial of fair trial by the trial judge and as an IAC claim. (ECF No. 8-10 at 12 and 17-18.) The PCR court rejected his argument because "the interruptions added two, perhaps three, days to the original projected trial length." (ECF NO. 8-10 at 18 ("Even with ... delay[] for a few days due to the holiday and government shutdown, it was well within the judge's discretion to grant continuances and determine how trial should proceed").)

In other words, Petitioner's direct appeal, PCR, and habeas claims on the Mistrial Issue conflate concepts of: IAC, due process, fair trial, juror misconduct, and disjointed trial proceedings. The Mistrial Issue is patently without habeas merit, whether Petitioner frames it as an IAC or fair trial claim.

First, to the extent Petitioner raises the Mistrial Issue as an IAC concept, he cannot show that trial counsel's performance fell below an objective standard of reasonableness. *Jacobs*, 395 F.3d at 102. Judge Perfilio acted promptly and issued curative instructions as to the Sleeping Jurors Issue and Outside Influence Issue. As the Appellate Division noted, "a mistrial[,] ... a matter within the sound discretion of the [trial] court[,] ... would not have been proper." (*Ibid.* (internal citations omitted).) Moreover, Juror Eight served as an alternate and did not deliberate. (ECF No. 8-10 at 15.) On these facts, it is objectively reasonable to conclude that a mistrial argument "would not have been proper"

(ECF No. 8-10 at 15) and stood little, if any, chance of success. Counsel's decision not to make that argument was a "reasonable strategic decision," much like counsel's decision on Juror Eight's removal. (*See* ECF No. 8-10 at 15.) This "strategic decision" logic is equally determinative as to Petitioner's criticism of appellate counsel for not arguing mistrial. (*See* ECF No. 8-15 at 7 ("Because none of these issues are meritorious, appellate counsel was not ineffective in choosing not to raise them on appeal").)

Second, to the extent Petitioner intends the Mistrial Issue to assert a due process or fair trial claim arising from the government shutdown's impact on trial, this Court will address his contention in the next section of this Opinion. *See infra* regarding Ground Six.

In sum, Petitioner has not shown that trial counsel's conduct in not seeking a shutdown-based mistrial falls outside the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. It would not have been objectively reasonable for trial counsel to pursue a mistrial based simply on two days of calendar delay. It was not contrary to or an unreasonable application of *Strickland* and its progeny for the state courts to rule that Petitioner did not satisfy *Strickland*'s deficient performance prong.

Ground Five is denied in its entirety.

**F. Ground Six: Denial Of Due Process Based On Disjointed Trial Proceedings**

Ground Six contends that "Petitioner was denied his Fourteenth Amendment right to due process because of disjointed trial proceedings." (ECF No. 1-2 at 33 ("Disjointed Trial Claim").) Ground Six's Disjointed Trial Claim is a mirror image of Ground Five's Mistrial Issue, to the extent Petitioner intends the Mistrial Issue to assert a due process claim.

Trial occurred on June 26, 27, 28, and 29, 2006. It resumed on Monday, July 10, 2006. (ECF Nos. 8-20 – 8-26.) On Thursday, June 29, Judge Perfilio stated that a possible government shutdown might necessitate a trial continuance. (ECF No. 8-25 at 116-18.) After the shutdown occurred, trial resumed on July 10, 2006. (ECF No. 8-26.) The jury rendered its verdict on July 13, 2006. (ECF No. 8-29 at 6-8.)

This Court finds that Ground Six's argument, both as asserted in the Mistrial Issue and the Disjointed Trial Claim, is without merit.

The United States Supreme Court has held that a trial court has broad discretion as to continuances in a criminal case. *See Ungar v. Sarafite,* 376 U.S. 575, 589 (1964); *see also Morris v. Slappy,* 461 U.S. 1, 11 (1983). "The matter of a continuance is traditionally within the discretion of the trial judge who must be given wide latitude in arranging the court's schedule." *Government*

*of the Virgin Islands v. Charleswell*, 115 F.3d 171, 174 (3d Cir. 1997) (citation omitted). "Trial courts possess broad discretion in setting the schedule and format of trial." *United States v. Berry*, 732 F. App'x 127, 132 (3d Cir. 2018) (citation omitted). *Accord Moore v. Hendricks*, No. 04-2337, 2006 WL 1469987, at *9 (D.N.J. May 26, 2006). New Jersey law is consistent with these principles. (ECF No. 8-10 at 18 (citations omitted).) Trial court decisions as to continuances are an abuse of discretion "only when [they are] so arbitrary as to violate due process." *United States v. Khorozian*, 333 F.3d 498, 507 (3d Cir. 2003).

In this case, though, trial's continuance was necessitated by the government shutdown. It was not invoked as an exercise of the trial judge's discretion. Therefore, continuation of trial on July 10 was not an unconstitutional abuse of discretion by Judge Perfilio. It was an unavoidable reality of government.

If not for the summer of 2006 government shutdown, the trial presumably would have continued on Monday, July 3, 2006. July 4 is a federal holiday, so trial would not have taken place that day. Furthermore, Judge Perfilio stated at trial's June 26 outset that it would continue from its first week into July 5-6, 2006 of the following week. (ECF No. 8-21 at 8.) Therefore, the shutdown "only added two, perhaps three, additional days to the original trial [schedule]." (ECF No. 8-10 at 18.) To contend, as Petitioner does, that this purportedly "disjointed" trial schedule denied him due

process is utterly frivolous. He has not, for example, demonstrated how the shutdown's impact precluded him from questioning witnesses or presenting defenses. (*See* ECF No. 1-2 at 35-36.) He states that some jurors "expressed a hardship in continuing with the trial" (*id.* at 35), but he does not demonstrate that any juror was, in fact, unable or unavailable to fairly deliberate. He has not shown that the shutdown's addition of two to three days to the trial calendar "deprived [him] of fundamental elements of fairness in his criminal trial." *See Glenn,* 743 F.3d at 407.

The patently frivolous Disjointed Trial Claim will be denied on the merits.

### G. **Ground Seven: Cumulative Errors**

Ground Seven argues that that the cumulative effect of the errors alleged in the § 2254 Petition denied Petitioner his constitutional rights. (ECF No. 1-2 at 36 ("Cumulative Error Claim").)

The PCR judge rejected the Cumulative Error Claim as: not only procedurally barred under New Jersey Rule of Court 3:22-4; but also without merit. (ECF No. 8-10 at 19 (none of the errors identified by Petitioner showed "an egregious injustice").) Petitioner did not raise the Cumulative Error Claim in his appeal of PCR denial or in his petition for certification to the New Jersey Supreme Court. (*See* ECF No. 8-15.)

Petitioner thus failed to exhaust the Cumulative Error Claim.

*See O'Sullivan*, 526 U.S. at 838, 845); *Rose*, 455 U.S. 509; *Henderson*, 155 F.3d at 164; *Lambert*, 134 F.3d at 513; *Toulson*, 987 F.2d 984. A cumulative error claim is a distinct claim that is subject to the exhaustion and procedural default doctrines. *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 533, 541 (3d Cir. 2014). Nevertheless, this Court may, and will, deny this unexhausted claim on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728 3d Cir. 2005).

"The cumulative error doctrine allows a petitioner to present a stand-alone claim asserting the cumulative effect of errors at trial so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins*, 742 F.3d at 542. "Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Id.* (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)). The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *15 (D.N.J. Feb. 6, 2015) (citing *Hein v. Sullivan,* 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also Fahy,* 516 F.3d at 205 ("Cumulative

errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

Ground Seven's Cumulative Error Claim is a mere redundancy of Grounds One through Six, which, as fully explained *supra*, do not merit habeas relief. Given that there is no merit to the § 2254 Petition's claims for individual errors, Grounds One through Six cannot yield a cumulative error claim in Ground Seven. In short, there is no basis for habeas relief premised upon an alleged accumulation of errors that does not exist. *See*, *e.g.*, *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at \*15 (D.N.J. Feb. 6, 2015); *Stewart v. United States*, No. 12-346, 2014 WL 3573395, at \*12 (D.N.J. July 21, 2014).

Ground Seven will be denied in its entirety.

## H. Ground Eight: Fair Trial Claims, IAC Claims, Disjointed Trial Claim, And Cumulative Error Claim

Ground Eight is a mere re-statement of: the IAC Claim's Voir Dire Issue, Removal Issue, and Mistrial Issue (Ground Five); the Fair Trial Claim's Sleeping Jurors Issue, Comment Issue, Attention Issue, and Gesture Issue (Ground Five); the Disjointed Trial Claim (Ground Six); and Cumulative Error Claim (Ground Seven). (*See* ECF No. 1-2 at 37.)

As fully explained *supra*, Grounds Five through Seven do not warrant habeas relief. Therefore, Ground Eight does not yield a meritorious claim for habeas relief and will be denied.

## I. **Ground Nine: Excessive Sentence**

Ground Nine argues that Petitioner's sentence is manifestly excessive. (ECF No. 1-2 at 37-40.) Specifically, Petitioner contends that Judge Perfilio abused his discretion by: imposing fourteen year terms on each robbery conviction; requiring the terms to run consecutively to each other, as well as to the sixteen year term Petitioner was already serving; finding two of three aggravating factors; and ignoring mitigating factors. (*Ibid.*)

At sentencing, Judge Perfilio merged the convictions for first degree robbery and possession of a weapon for an unlawful purpose on each indictment. He imposed two consecutive fourteen-year terms subject to an eighty-five percent parole disqualifier pursuant to NERA. *Black 2009 II* at *1. Judge Perfilio found that "aggravating factors (3), (6), and (9) clearly, convincingly[,] and substantially outweigh nonexistent mitigating factors and there is a need to protect the public." *Ibid.* In particular, the judge found persuasive the fact that: Petitioner committed multiple, similar robberies within a short period of time using the same methods against multiple victims; the Exxon robbery turned into a shooting that was particularly egregious. *Ibid.* The judge imposed two concurrent five-year terms for each unlawful

possession of a weapon conviction. Therefore, Petitioner was sentenced to an aggregate twenty-eight year term with an eighty-five percent NERA parole disqualifier. *Ibid*.

The Appellate Division rejected the Excessive Sentence Claim during direct appeal, explaining as follows:

> From our careful review of the record, we conclude that the sentencing factors identified by the judge are supported by the evidence. The aggravating factors preponderate and justify imposition of a term closer to the top of the range. The sentence is in accord with the sentencing guidelines and based on a proper weighing of the factors.. The sentence does not shock our judicial conscience.

*Black 2009 II* at *7.

Short of a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence present questions of state law over which this Court has no jurisdiction under § 2254. Petitioner's challenge to sentencing "for failure to properly weigh the aggravating and mitigating factors is not reviewable here." *See Jenkins v. Bartkowski*, No. 10-4972, 2014 WL 2602177, at *21 (D.N.J. June 11, 2014). Petitioner "has presented no cogent argument why his sentence is unconstitutional in this regard, other than general allegations that the sentencing court did not properly weigh the aggravating and mitigating factors." *See id.*; ECF No. 1 at 14.

Moreover, "Petitioner's sentence is not grossly disproportionate to the crime he committed." *Id*. Therefore, "even if the Court were to read an Eighth Amendment argument into [Ground Nine], it would not state a violation of federal constitutional limitations." *Id*. *See also Chapman v. United States*, 500 U.S. 453, 465 (1991); *Gibbs v. Bartkowski*, No. 11-1137, 2018 WL 2002786, at *15 (D.N.J. Apr. 30, 2018), *reconsideration denied*, 2018 WL 3201782 (D.N.J. June 29, 2018).

Petitioner's aggregate twenty-eight year sentence is not unconstitutional under the governing standards.

First, this sentence was not arbitrary. Rather, it was supported by Judge Perfilio's determinations that: "there is a terrible risk, after having committed three robberies, that you would commit another one"; "shooting the Exxon station guy ... was a particularly heinous offense, and there is clearly, convincingly, and substantially a need to deter this type of conduct from you and other people"; and therefore "aggravating factors clearly, convincingly, and substantially outweigh the non-existing mitigating factors as to both charges here." (ECF No. 8-30 at 5.) Judge Perfilio explained that Petitioner's commission of multiple, independent offenses qualified Petitioner for consecutive, rather than concurrent, sentences:

> There were separate locations, separate
> criminal acts, separate acts of robbery, and
> separate victims. The crimes involved separate

> acts of violence ... [E]ach of these two
> robberies for which you were convicted each
> carry with them ten to twenty year sentences
> as first degree robberies.

(ECF No. 8-30 at 5-6.) Judge Perfilio took the prosecutor's recommendation and sentenced Petitioner below mid-range -- at fourteen years for both robberies. (*Id.* at 6.)

Second, the sentence is within New Jersey's robbery statute and NERA's permissible range on the robbery charge. *See* N.J. Stat. Ann. § 2C:15-1[20]; N.J. Stat. Ann. § 2C:44-3a.[21]

The state court's adjudication of this issue was therefore neither contrary to nor an unreasonable application of, clearly established Supreme Court precedent. *See Velez v. Lagana*, No. 12-0430 (DRD), 2015 WL 2344674 at *12 (D.N.J. May 14, 2015) ("Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of

---

[20] "Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." N.J. Stat. Ann. § 2C:15-1b.

[21] "The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in subsection a., b., c., or f. of this section ... (a) The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender ..." N.J. Stat. Ann. § 2C:44-3a.

a sentence are questions of state law over which this Court has no jurisdiction under § 2254") (internal citations omitted). Petitioner cites to no constitutional provision or federal law to support his Excessive Sentence Claim.

For these reasons, the Court denies Ground Nine.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim[s], a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." *Didiano v. Balicki*, Civil Action No. 09-2315 (FLW), 2010 WL 1752191, at *6-7 (Apr. 29, 2010) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000e.g) ). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.   CONCLUSION

For all of the foregoing reasons, the Petition is denied with prejudice and no certificate of appealability shall issue. An appropriate Order follows.

Dated: Dec 5 , 2019

Madeline Cox Arleo
United States District Judge